UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RECOLOGY INC.,<br><br>Defendant. | Case No. 15-cv-03969-SI<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>Re: Dkt. 30 |

Defendant Recology, Inc.'s motion to dismiss plaintiff Continental Casualty Company's first amended complaint is scheduled for a hearing on January 29, 2016. Dkt. 30. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES IN PART and GRANTS IN PART defendant's motion to dismiss, with leave to amend. If plaintiff wishes to file an amended complaint, plaintiff must do so by **February 5, 2016**. **The case management conference scheduled for 10 a.m. on January 29. 2016 remains on calendar.**

**BACKGROUND**

The following allegations are taken from plaintiff's first amended complaint ("FAC"). Dkt. 25. This is a civil diversity action stemming from a workers' compensation excess insurance policy between plaintiff insurer Continental Casualty Company ("CCC") and defendant Recology, Inc. ("Recology"), the insured. FAC ¶¶ 1, 10. Recology was formerly known as Norcal Solid Waste Systems, Inc. ("Norcal") until it changed its name to Recology in 2009. *Id*. ¶ 3. This Court will refer to the entity formerly known as Norcal as Recology. A "Specific Excess Workers Compensation Policy" ("Excess Policy"), covering Recology and certain companies affiliated with

Recology that were listed in a Named Insured Endorsement, was in effect between April 1, 1995 and April 1, 1996. *Id*. ¶¶ 14, 15, Ex. A, at 3-5.[1] During this same period, between April 1, 1995 and April 1, 1996, certain of Recology's other affiliated companies, including Sunset Scavenger and South Valley Disposal and Recycling, were insured by Reliance Insurance Company ("Reliance"), not CCC. *Id*. ¶¶ 7, 9, 10.

In July 1995, an employee of Sunset Scavenger named Miguel Alvarez was injured in the course of his employment. *Id*. ¶ 12. After Mr. Alvarez's injury, Recology, on behalf of Sunset Scavenger, notified Reliance of Mr. Alvarez's workers' compensation claim ("Alvarez Claim"). *Id*. ¶ 14. Reliance accepted coverage and paid out the claim pursuant to the Reliance policy. *Id*. ¶ 14. Sometime between Reliance's assumption of its payment obligation and May 12, 1999, Reliance ceased paying the Alvarez Claim. *Id*. ¶ 14. In August 1995, Abelardo Casas, an employee of South Valley Disposal and Recycling, was injured in the course of his employment. *Id*. ¶ 21. As in the case of Mr. Alvarez, Recology notified Reliance of Mr. Casas' workers' compensation claim ("Casas Claim") and Reliance assumed its payment obligation until it was no longer able to do so on an unspecified date. *Id*. ¶ 23.

On May 12, 1999, Recology notified CCC of the Alvarez Claim but did not request immediate payment because Recology's $350,000 "self-insured retention was not yet depleted." *Id*. ¶ 15. In this notification, Recology identified Alvarez's employer as "Norcal Waste Systems" and indicated the date of Mr. Alvarez's injury. *Id*. ¶ 15. The FAC alleges that Recology failed to disclose that it had a separate workers' compensation program for certain of its operations through Reliance, nor did it disclose that the Alvarez claim had been submitted to Reliance and that Reliance had been providing coverage. *Id*. Sometime prior to December 11, 2007, Recology provided notice to CCC that Recology had exhausted its self-insured retention of $350,000, and Recology requested that CCC begin making excess indemnification payments on the claim. *Id*. ¶ 16. CCC made seven payments on the Alvarez Claim between December 2011 and May 2014.

---

[1] Plaintiff attached a copy of the excess insurance policy to the FAC. Defendant does not dispute the authenticity of this exhibit. Under these circumstances, the Court may consider this exhibit for purposes of ruling on the motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

*Id.* ¶ 17. In total, the amount paid by CCC on behalf of Mr. Alvarez was $537,515.65. *Id.* ¶ 17.

On August 30, 2013, Recology notified CCC of the Casas Claim and requested immediate indemnification payments because its self-insured retention was depleted. *Id.* ¶¶ 24, 25. Recology erroneously claimed the Casas Claim was covered by the Excess Policy. *Id.* ¶ 24. CCC made three indemnification payments to Recology on the Casas Claim between December 2013 and June 2014. *Id.* ¶ 26.

In September 2014, CCC conducted an audit of the file of Recology's claims administrator. *Id.* ¶¶ 18, 27. CCC discovered "for the first time" that neither the Alvarez Claim nor the Casas Claim was covered by the Excess Policy and that CCC had been mistakenly indemnifying Recology on those claims. *Id.* In addition, CCC discovered during its audit that before Recology submitted the Alvarez and Casas Claims to CCC, it had submitted them to Reliance and Reliance had made payments on the claims. *Id.* On or around December 19, 2014, CCC notified Recology that neither the Alvarez Claim nor the Casas Claim was covered by the Excess Policy, and that CCC would cease its payments to Recology. *Id.* ¶¶ 19, 28. CCC requested that Recology repay CCC for the funds mistakenly paid on both claims. *Id.* Recology has refused to repay CCC for the payments made on the Alvarez and Casas Claims. *Id.* ¶¶ 20, 29.

On August 31, 2015, plaintiff filed a complaint against defendant, alleging causes of action for (1) Declaratory Relief, (2) Restitution - Unjust Enrichment, (3) Common Count - Money Had and Received, (4) Common Count - Open Book Account, and (5) Common Count - Mistaken Receipt. Dkt. 1. On November 9, 2015, plaintiff filed the FAC, which expanded the number of claims by making each claim specific to either the Alvarez or Casas Claims. By the present motion, defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss six of the ten causes of action for failure to state a claim upon which relief may be granted.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

3

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.  Third, Fifth and Ninth Causes of Action**

Defendant moves to dismiss the third, fifth and ninth causes of action[2] as untimely. The parties agree that these causes of action are subject to a three-year statute of limitations for claims

---

[2] These causes of action relate to the Alvarez Claim, and allege claims for restitution – unjust enrichment; common count – money had and received; and common count – mistaken receipt. Recology does not challenge plaintiff's claims related to the Casas Claim because plaintiff alleges that CCC was notified of the Casas Claim in 2013, within the three year statute of limitation of Civ. Proc. § 338(d).

based on fraud or mistake. *See* Cal. Code Civ. Proc. § 338(d).[3]  Defendant contends that these claims accrued in 1999 when Recology notified CCC of the Alvarez Claim, and that CCC has not alleged facts establishing the applicability of the "discovery rule" under California law. Defendant argues that as an insurer, CCC had a duty to investigate the existence of coverage when CCC received notice of the Alvarez Claim in 1999. Defendant argues that the FAC does not allege why CCC did not and could not have discovered in 1999 that Alvarez was not employed by an insured listed on the Additional Named Insured Endorsement to the CCC Policy.

Plaintiff responds that its causes of action related to the Alvarez claim are not untimely because CCC justifiably relied on Recology's representation that the Alvarez Claim was covered by the Excess Policy. Pl.'s Opp'n 6:27-7:9. Plaintiff argues the duties of an excess insurer to investigate claims are different than those of a primary insurer, and that under the terms of the Policy, Recology, not CCC, had the duty to investigate Mr. Alvarez's claim. *See* FAC, Ex. A at Part 7. Plaintiff asserts that CCC, as the excess insurer, reasonably and in good faith relied on Recology's representations that the Excess Policy covered the Alvarez Claim. Plaintiff also asserts that the question of whether CCC was reasonably diligent in discovering the factual basis of its claims against Recology is a factual matter that should not be resolved on the pleadings.

The statute of limitations begins to run when the cause of action "accrues." Cal. Code Civ. Proc. § 312 (West). A cause of action generally accrues when "the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal. 2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999)). The discovery rule is an exception to the general rule. The California discovery rule is codified in Cal. Code Civ. Proc. § 338. That section states that "an action for relief on the ground of fraud or mistake [must be brought within three years]. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code

---

[3] *See* Cal. Code Civ. Proc. § 338(d) (providing that the time for commencement of a civil action "for relief on the ground of fraud or mistake" must be three years; however, "[t]he cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.").

5

Civ. Proc. § 338(d) (West). Consequently, the statute of limitations will not have begun to run until the injured party discovers "the facts constituting the fraud or mistake." *Id*. Where a claim would be barred without the discovery rule, the plaintiff must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." *McKelvey v. Boeing North American, Inc*., 74 Cal. App. 4th 151, 160 (Cal. Ct. App. 1999), *superseded by statute on other grounds as stated in Grisham v. Philip Morris U.S.A., Inc*. 40 Cal.4th 623, 637, n.8 (Cal. 2007).

The Court concludes that plaintiff has sufficiently alleged a basis to invoke the discovery rule, and that whether CCC in fact acted with reasonable diligence in discovering the facts giving rise to its claims is a question that must be resolved on a fuller factual record. The Court cannot determine, at this stage of the litigation, whether CCC acted reasonably in accepting Recology's representations regarding the Alvarez Claim. *See Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (Cal. Ct. App. 2008) (stating that the question of when "a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion."); *see also Kaiser Foundation Hospitals v. North Star Reinsurance Corp*., 90 Cal. App. 3d 786, 794 (Cal. Ct. App. 1979) (in a case brought by a hospital against an excess insurer, stating that the rights and duties of the parties "are best decided in the light of concrete facts"). Accordingly, the Court DENIES defendant's motion to dismiss the third, fifth and ninth causes of action as untimely.[4]

## II.   Seventh and Eighth Causes of Action

Defendant moves to dismiss the seventh and eighth causes of action alleging open book

---

[4] Defendant also moves to dismiss as untimely the first cause of action for declaratory relief. Defendant contends that this claim rises and falls with plaintiff's "coercive" causes of action regarding the Alvarez Claim, while plaintiff asserts that this claim did not accrue until December 2014, when the controversy as to the Excess Policy's interpretation began. The Court finds it unnecessary to resolve this dispute at this time because under either analysis, the declaratory relief claim proceeds.

1    accounts for both the Alvarez and Casas Claims.  Defendant contends that plaintiff cannot allege
2    that a debtor-creditor relationship existed between CCC and Recology or that the parties intended
3    for a book account to have been created.  Defendant notes that the FAC alleges that it was not until
4    the September 2014 audit that CCC allegedly discovered that the indemnity payments it had been
5    making for years on the Alvarez and Casas Claims were made in error, and that it was not until
6    December 2014 that CCC first informed Recology of CCC's allegedly mistaken payments and
7    requested reimbursement.  *See* FAC ¶¶ 18-19.  Defendant contends that these allegations
8    demonstrate that CCC did not consider any of its records of its Alvarez or Casas indemnity
9    payments to be records of Recology's indebtedness, thus precluding the open book account
10   claims.

The FAC alleges, as to the Alvarez and Casas claims:

> Continental Casualty and Recology have a series of financial transactions between them with respect to the Policy, including without limitation premium payments and claim payments.  At all times relevant to this action, Continental Casualty has kept an account of the debits and credits involved in the transactions.  The account remains open because not all claims have been resolved in connection with the Policy.

FAC ¶¶ 55, 60.  Plaintiff also notes that the Policy attached to the complaint provides that CCC "will indemnify" Recology "for loss resulting from an occurrence during the Policy Period" and that the premiums paid by Recology "shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premiums for the Policy Period." *Id*. Ex. A Part 1, Part 6; *see also id*. Ex. A, Part 8 ("[CCC] will indemnify the Insured for any loss for which it may be liable under this Policy.").  Plaintiff also cites several cases for the proposition that open book account claims may find their bases in insurance policies.  *See, e.g., Home Ins. Co. v. Gates McDonald & Co*., No. CV 01-07365CASJTL, 2004 WL 5486631, at *10 (C.D. Cal. Feb. 9, 2004); *Walter J. Warren Ins. Agency v. Surpur Timber Co*., 250 Cal. App. 2d 99 (Cal. Ct. App. 1967).

Cal. Code Civ. Proc. § 337a (West) defines a "book account" as follows:

> a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a

7

reasonably permanent form and manner . . . .

Cal. Civ. Code Proc. § 337a; *see also Cusano v. Klein*, 264 F.3d 936, 942 fn. 2 (9th Cir. 2001) (defining open book account). A book account is "open" if "the debtor has made some payment on the account, leaving a balance due." *Interstate Grp. Administrators, Inc. v. Cravens, Dargan & Co.*, 174 Cal. App. 3d 700, 708 (Cal. Ct. App. 1985). An open book account has a statute of limitations period of four years after the date of the last entry. Cal. Code Civ. Proc. § 337(2) (West).

One court has held that "[i]n deciding whether a book account exists the court must examine the agreement, or lack of agreement, between the parties and their conduct in the context of their commercial dealing. The mere incidental keeping of accounts does not alone create a book account." *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (Cal. Ct. App. 1987). The same court explained that a book account will not be created where a creditor "acts in a self-serving manner" by creating a "private record of account without informing the debtor." *Id.* at 751-53 (refusing to find a book account where defendant was unaware he was indebted to plaintiff and plaintiff kept its own account of debits and credits). Even if a creditor shares its records with the debtor, the record will not create a "bootstrap" to bind the debtor to the creditor's keeping of accounts. *Id.* at 751-52.

The Court concludes that the FAC does not sufficiently allege a basis for the open book account causes of action. As defendant notes, the FAC explicitly alleges that CCC mistakenly thought that it was properly reimbursing defendant for policy benefit payments that plaintiff owed to defendant under the Policy. *See* FAC, ¶¶ 16-17. The FAC does not allege facts showing that, with regard to these mistaken payments, CCC and Recology had a debtor-creditor relationship as required by Civ. Proc. § 337a. The FAC alleges that CCC's expectation of repayment only arose when it discovered through the audit in 2014 that it was paying for claims not covered under the Excess Policy. Accordingly, this Court GRANTS defendant's motion to dismiss the seventh and eighth causes of action, and GRANTS plaintiff leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART defendant's motion to dismiss with leave to amend. Dkt. 30. If plaintiff wishes to file an amended complaint, plaintiff must do so by **February 5, 2016**.

**IT IS SO ORDERED**.

Dated: January 26, 2016

_____
SUSAN ILLSTON
United States District Judge